# SUPREME COURT OF ARKANSAS

**No.** CV–17–411

| | |
|---|---|
| ESTATE OF ANDERSON DALE WILLIAMS ET AL. | **Opinion Delivered** September 14, 2017 |
| APPELLANTS | |
| V. | |
| SCHWARZE INDUSTRIES, INC., ET AL. | DISSENTING OPINION ON DENIAL OF PETITION FOR REVIEW. |
| APPELLEES | |

**JOSEPHINE LINKER HART, Justice**

I dissent from the denial of review in this case. Yet again, the court of appeals has improperly used a procedural bar to avoid considering the merits of an appeal. In my view, this court should have remanded this case to the court of appeals to review the merits of this case.

Anderson Dale Williams, a highway department employee, was killed when he was run over by a highway sweeper. It was proven at trial that the sweeper was not equipped with simple safety features like parabolic mirrors that would have allowed the driver of the sweeper to see Mr. Williams. Mr. Williams's estate sued the manufacturer of the sweeper in a products-liability case, and the manufacturer prevailed. The estate filed a motion for judgment notwithstanding the verdict (JNOV), which was denied.

Our preservation jurisprudence requires that, in order to appeal from the denial of a JNOV, the appellant make a motion for a directed verdict. *Willson Safety Products v.*

*Eschenbrenner*, 302 Ark. 228, 788 S.W.2d 729 (1990); Ark. R. Civ. P. 50(b). The purpose

of requiring a directed-verdict motion to preserve a motion for JNOV "is to require a party

testing the sufficiency of the evidence first to submit the question to the trial court, thereby

permitting the court to make a ruling at the conclusion of all the evidence but prior to

verdict, thus preserving the specific question for appeal." *Eschenbrenner*, 302 Ark. at 232, 788

S.W.2d at 732. Unquestionably, the estate's trial counsel accomplished this.

The estate's trial counsel unquestionably made such a motion as demonstrated by the

following:

THE COURT: Mr. Gibson?

MR. GIBSON: Your Honor, as I have previously stated, the evidence is in a posture at best for counsel's motion, there are facts in dispute. And the jury could—The evidence could support a verdict on all theories, three theories of liability.

And I will address that we have alleged that the sweeper was not fit for its intended purpose which satisfies the pleading in this case and the proof under that pleading.

Now, I will say this: We think that we have gotten very close to a directed verdict ourselves on the issue that a convex mirror would have prevented this accident because their testimony from their expert said it may have. He has not negated our assertion—

THE COURT: You've still got the issue of proximate cause, so you're wrong.

MR. GIBSON: I rest.

THE COURT: Okay.

Okay. I—You know, I have to consider the issues at this time and the evidence in the light most favorable to the nonmoving party. The nonmoving party would be the Plaintiff. And in doing that, there are questions of fact on almost everything that's been mentioned by the Defendant. And I'm not making a comment concerning the weight of the evidence, because I'm not required to do that at this time. But I am

required to consider both the testimony and the circumstantial evidence. And in doing that, like I did before, I'm denying the motions for directed verdict. That's the ruling.

*Estate of Williams v. Schwarze Indus., Inc.*, 2017 Ark. App. 255, 521 S.W.3d 139.

Inexplicably, the court of appeals focused not on the directed-verdict motion itself, but rather on the prediction of the estate's trial counsel about whether the case was so strong that submitting it to the jury was not even necessary—the sentence, "We think that we have gotten very close to a directed verdict ourselves," meant exactly that. Instead, the court of appeals treated that statement as a failure to make a directed-verdict motion. They reasoned that getting close to making a directed-verdict motion is not the same as making one.

Had the court of appeals considered the context in which the statement was made, I doubt that it would have made such an obvious error. "We think that we have gotten very close to a directed verdict ourselves," which is little more than trial counsel's irrelevant prediction about how its proof has come in, was immediately followed by the operant text of the motion, the statement, "on the issue that a convex mirror would have prevented this accident because their testimony from their expert said it may have. He has not negated our assertion." This directed-verdict motion is wholly consistent with mainstream theories of products liability, i.e., that the failure to include on a product a low-cost piece of safety equipment commonly used in the industry renders a product defective and unreasonably dangerous.